UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WHITE HAWTHORNE, LLC,                         :
                                              :
              Plaintiff,                      :
                                              :
       v.                                     :          CIVIL INDEX NO.
                                              :
THE REPUBLIC OF ARGENTINA,                    :
                                              :
              Defendant.                      :

---

## COMPLAINT

Plaintiff White Hawthorne, LLC ("White Hawthorne" or "Plaintiff"), by its undersigned counsel, as and for its Complaint against Defendant Republic of Argentina (the "Republic"), alleges as follows:

## NATURE OF THE ACTION

1.      This is a breach of contract action arising from the Republic's failure to make contractually mandated principal and interest payments on certain bonds held by White Hawthorne and issued by the Republic pursuant to a Fiscal Agency Agreement, dated October 19, 1994 (the "FAA") between the Republic and Bankers Trust Company, as Fiscal Agent.  For its relief, White Hawthorne seeks payment of the principal amount of the bonds together with any accrued and unpaid interest, as provided for in the FAA.  A true and accurate copy of the FAA is attached as **Exhibit A**.

2.      This action also seeks specific performance of the Republic's payment obligations pursuant to the Equal Treatment Provision of the FAA, paragraph 1(c) of the FAA (the "Equal Treatment Provision of the FAA"), which provides for equal treatment in terms of rank and priority of payment for holders of bonds issued under the FAA with respect to any unsecured and unsubordinated External Indebtedness as defined in the FAA.  From 2005 to the

present, the Republic has engaged in a course of conduct which violates the Equal Treatment

Provision of the FAA.

3.      In particular, under color of Law 26,017 passed in 2005 and Law 26,547

passed in 2009, the Republic issued bonds in its 2005 and 2010 Bond Exchanges with payment

obligations that rank higher than those issued under the FAA and held by White Hawthorne. The

bonds issued in the Exchanges are External Indebtedness as defined under the FAA.  The

Republic's issuance of these higher ranking bonds, facilitated by Laws 26,017 and 26,547, and

its continuing payment of semi-annual interest to the holders of the bonds issued in the 2005 and

2010 Bond Exchanges, while paying nothing to White Hawthorne and other bondholders who

did not participate in the Exchanges, violates the Equal Treatment Provision of the FAA.

4.      In May 2014, the Republic also began issuing bonds bearing ISIN

ARARGE03H413 (the "BONAR 2024 Bonds") and has made payments on the BONAR 2024

Bonds while paying nothing to White Hawthorne in violation of the Equal Treatment Provision

of the FAA.  To prevent further violations, White Hawthorne seeks specific performance of the

Equal Treatment Provision with respect to the 2005 and 2010 Bond Exchanges, the BONAR

2024 Bonds, and all other External Indebtedness.

### THE PARTIES

5.      Plaintiff White Hawthorne, LLC is a Delaware limited liability company.

6.      Defendant Republic of Argentina is a Foreign State as defined in 28

U.S.C. § 1603.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. 1330(a),

as the Republic is a Foreign State which has explicitly and unconditionally waived sovereign

2

immunity with respect to actions arising out of or based on the securities issued pursuant to the FAA, or arising out of or based on the FAA itself, by holders of the securities thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

8.      In addition, this Court has personal jurisdiction over the Republic because the Republic regularly conducts business in New York and the Republic consented in the FAA to submit to the jurisdiction of this Court in respect to actions arising out of or based on the securities issued pursuant to the FAA, or arising out of or based on the FAA itself, by holders of securities issued thereunder.

9.      Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

## FACTUAL ALLEGATIONS

### White Hawthorne's FAA Bonds

10.      White Hawthorne is the owner of $10,741,000 principal amount of bonds issued pursuant to the FAA by the Republic, ISIN US040114AR16 (the "US040114AR16 Bonds"). The US040114AR16 Bonds have a coupon rate of 11.375% and mature on January 30, 2017, but are presently due and payable.

11.      White Hawthorne is the owner of $62,000 principal amount of bonds issued pursuant to the FAA by the Republic, ISIN US040114AV28 (the "US040114AV28 Bonds"). The US040114AV28 Bonds have a coupon rate of 9.75% and matured on September 19, 2027, but are presently due and payable.

12.      White Hawthorne is the owner of $594,000 principal amount of bonds issued pursuant to the FAA by the Republic, ISIN US040114FC91 (the "US040114FC91 Bonds"). The US040114FC91 Bonds have a coupon rate of 11.375% and matured on March 15,

2010, at which time the entire principal amount on the US040114FC91 Bonds became due and payable.

13.     White Hawthorne is the owner of $1,061,000 principal amount of bonds issued pursuant to the FAA by the Republic, ISIN US040114GD65 (the "US040114GD65 Bonds").  The US040114GD65 Bonds have a coupon rate of 12.375% and matured on February 21, 2012, at which time the entire principal amount on the US040114GD65 Bonds became due and payable.

14.     White Hawthorne is the owner of $99,000 principal amount of bonds issued pursuant to the FAA by the Republic, ISIN US040114GG96 (the "US040114GG96 Bonds").  The US040114GG96 Bonds have a coupon rate of 12.25% and matured on June 19, 2018, but are presently due and payable.

15.     White Hawthorne is the owner of $1,000,000 principal amount of bonds issued pursuant to the FAA by the Republic, ISIN US040114GH79 (the "US040114GH79 Bonds").  The US040114GH79 Bonds have a coupon rate of 12% and matured on June 19, 2031, but are presently due and payable.

16.     A record of White Hawthorne's total holdings of the FAA bonds, including those referenced above, is attached as **Exhibit B**.

**The Republic's Default Under the FAA**

17.     Pursuant to Section 12 of the FAA, the following, *inter alia*, are defined as "Events of Default":

> (a) Non-Payment:  The Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues of a period of 30 days; or
>
> \* \* \*

4

(d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

18.     Section 12 of the FAA further provides that following either of the foregoing Events of Default, a note holder, *i.e.,* plaintiff White Hawthorne, may give the Republic written notice and declare "the principal amount of such Securities held by it to be due and payable immediately," together with all accrued interest.

19.     In or about December 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt, including all payments due on bonds issued pursuant to the FAA.

20.     Since then, the Republic has failed to make payments due on the US040114AR16 Bonds, the US040114AV28 Bonds, the US040114FC91 Bonds, the US040114GD65 Bonds, the US040114GG96 Bonds, and the US040114GH79 Bonds held by White Hawthorne.

**The Republic's Violation of the Equal Treatment Provision of the FAA**

21.     Section 1 of the FAA contains an Equal Treatment Provision, which states:

> (c)     The Securities will constitute... direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. **The payment obligations of the Republic under the Securities shall at all times rank at least equally with all of its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).**

22.     The Republic, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to White Hawthorne.

23.     In 2005, the Republic restructured its debt by offering a bond exchange to

5

all holders of non-performing bonds governed by the FAA (the "2005 Exchange").

24.    The 2005 Prospectus for this Bond Exchange stated:

> *Existing defaulted bonds eligible for exchange that are not
> tendered may remain in default indefinitely. . . . The Government
> has announced that it has no intention of resuming payment on any
> bonds eligible to participate in [the] exchange offer. . . . that are
> not tendered or otherwise restructured as part of such transaction.*
> Consequently, if you elect not to tender your bonds in an exchange
> offer there can be no assurance that you will receive any future
> payments in respect to your bonds.

25.    Holders of approximately 25% of the Republic's non-performing bonds did not participate in the 2005 Exchange ("Non-tendering Bondholders").

26.    White Hawthorne did not participate in the 2005 Exchange.

27.    Bondholders who participated in the 2005 Exchange (the "2005 Exchange Bondholders") received bonds (the "2005 Exchange Bonds") scheduled to pay semi-annual interest.

28.    The first interest payment on the 2005 Exchange Bonds was due and paid in 2005.

29.    The Republic paid all subsequent interest due on the 2005 Exchange Bonds until the payment that came due on June 30, 2014.  On June 26, 2014, the Republic attempted to initiate payment to certain holders of 2005 Exchange Bonds by transmitting funds to the Bank of New York Mellon ("BNY Melon") as trustee.  By reason of Orders issued by the Court, BNY Melon did not further transmit these funds to holders of the 2005 Exchange Bonds. *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978(TPG ) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

30.    Upon information and belief, the Republic intends to continue paying or attempting to pay interest on all 2005 Exchange Bonds as it becomes due.

6

31.     To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 ("the Lock Law") on February 9, 2005. A true and correct copy of Law 26,017 and a certified translation are annexed hereto as **Exhibit C**.

32.     In its January 28, 2010 Prospectus, the Republic explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law." The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange . . . .**

33.     The assurances to tendering bondholders provided by Law 26,017 facilitated the Republic's completion of the 2005 Bond Exchange.

34.     Article 1 of Law 26,017 provided that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

a.     Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

b.     Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

c.     Article 4 - The national Executive Power must – within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions – order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

35.     The Republic violated the Equal Treatment Provision of the FAA by lowering the rank of its payment obligations under White Hawthorne's bonds below that of other

7

unsecured and unsubordinated External Indebtedness by relegating White Hawthorne's bonds to a non-paying class pursuant to Law 26,017.

36.     The Republic's courts have held that the Lock Law and the Republic's Moratorium on payment prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

37.     In 2009, in preparation for another bond exchange in 2010, the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange.  A true and correct copy of Law 26,547 and a certified translation are annexed hereto as **Exhibit D**.

38.     Law 26,547 provided:

    a.     Article 1. The effect of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010 or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the government bonds affected by the referenced regulation is completed, whichever occurs first.

    b.     Article 3. The financial terms and conditions that are offered may not be equal to or better than those offered to creditors, in the debt restructuring established by Decree No. 1735/04.

    c.     Article 5. ...
It is prohibited to offer the holders of government bonds who may have initiated judicial, administrative, arbitration or any other type of action, more favorable treatment than what is offered to those who have not done so.

39.     The prospectus for the Republic's 2010 Exchange stated:

Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely. In light of its financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation.* Argentina has opposed vigorously, and intends to continue to oppose,

attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . . and other legal proceedings against Argentina. Argentina remains subject to significant legal constraints regarding its defaulted debt. . . .

Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

40.     White Hawthorne did not participate in the 2010 Exchange.

41.     The Republic violated the Equal Treatment Provision of the FAA by relegating White Hawthorne's bonds to a non-paying class pursuant to Law 26,547.

42.     The Bonds issued in the 2010 Bond Exchange (the "2010 Exchange Bonds") began to pay semi-annual interest to those who participated in the Exchange (the "2010 Exchange Bondholders") in 2010.

43.     In 2010, the Republic began making semi-annual interest payment to holders of the 2010 Exchange Bonds.

44.     The Republic paid all subsequent interest due on the 2010 Exchange Bonds until the payment that came due on June 30, 2014.  On June 26, 2014, the Republic attempted to initiate payment to certain holders of 2010 Exchange Bonds by transmitting funds to BNY Melon as trustee.  By reason of Orders issued by the Court, BNY Melon did not further transmit these funds to holders of the 2010 Exchange Bonds. *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978(TPG ) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

45.     Upon information and belief, the Republic intends to continue paying or attempting to pay interest on all 2010 Exchange Bonds as it becomes due, despite court orders to the contrary.

46.     Upon information and belief, absent an Order of this Court, the Republic

will continue to pay holders of External Indebtedness – including the 2005 and 2010 Exchange Bondholders and holders of the BONAR 2024 Bonds – while paying nothing to White Hawthorne.

47.     White Hawthorne and the other Non-tendering Bondholders have been damaged as a result of the Republic's violations and will continue to be damaged by the continuing violations of the Equal Treatment Provision of the FAA.

48.     NML Capital, Ltd. ("NML") and other pre-judgment holders of defaulted bonds issued pursuant to the FAA sought specific performance of the Equal Treatment Provision of the FAA in three pre-judgment cases styled *NML Capital, Ltd v. The Republic of Argentina* Case Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG) (S.D.N.Y.) ("NML's pre-judgment actions").

49.     In Orders issued in NML's three pre-judgment actions, this Court:

a.     held that the Republic's actions, as described in paragraphs 19-43, *supra*, violated the Equal Treatment Provision of the FAA;

b.     granted partial summary judgment to NML on its equal treatment claims;

c.     held that NML had no adequate remedy at law and that, absent equitable relief, NML would suffer irreparable harm;

d.     held that the equities strongly supported injunctive relief;

e.     held that the Republic had the financial wherewithal to meet its payment obligations to NML in those cases; and

f.     issued an Amended Order requiring the Republic to specifically perform its equal treatment obligations by making ratable payment to NML whenever it paid the

DM1\6422025.3

2005 and 2010 Exchange Bondholders the amounts due on their bonds. A true and correct copy of this Court's December 7, 2011, February 23, 2012 and November 21, 2012 Orders are annexed hereto as **Exhibits E, F, and G**, respectively.

50.     On February 23, 2012, this Court issued an injunction to remedy the Republic's continuing violations of the Equal Treatment Provision of the FAA, which required the Republic to pay NML ratably whenever it paid the 2005 or 2010 Exchange Bondholders pursuant to their bonds.

51.     On October 26, 2012, the Second Circuit affirmed this Court's February 23, 2012 decision, but remanded the injunction for clarification.

52.     The Republic petitioned for a Writ of Certiorari on the October 26, 2012 Second Circuit decision in the United States Supreme Court. That petition was denied October 7, 2013.

53.     On November 21, 2012, this Court amended the February 23, 2012 injunction.

54.     On August 23, 2013, the Second Circuit affirmed this Court's November 21, 2012 decision.

55.     The Republic subsequently petitioned for another Writ of Certiorari on the August 23, 2013 Second Circuit decision to the United States Supreme Court, which was also denied on June 16, 2014.

56.     In response to the orders of this Court, the Second Circuit Court of Appeals, and the United States Supreme Court in NML's pre-judgment cases, the Republic's officials, including President Kirchner, have frequently said that the Republic will never pay NML or any other similar bondholders such as White Hawthorne.

57.    On June 16, 2014, President Kirchner declared in a televised address that the Republic would not "be subjected to such extortion," referring to the actions of NML and others, and this Court's Orders.

58.    On June 17, 2014, the Republic's Economy Minister Axel Kicillof announced the Republic's plan to swap the 2005 and 2010 Exchange Bonds for new bonds payable in the Republic.

59.    On June 20, 2014, the Court issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of this Court's Orders.

60.    On June 26, 2014, the Republic transferred $832 million to banks that process Exchange Bond payments (including $539 million to the BNY Mellon), the trustee for some of the Exchange Bonds) in an attempt to pay the Exchange Bondholders without making a Ratable Payment as required under the Amended February 23 Orders.

61.    On August 6, 2014, this Court held that "the payment by Argentina to BNY . . . was illegal and a violation of the Amended February 23 Orders." The Court also ordered BNY Mellon to hold the funds, and expressly prohibited the Republic from taking any "steps to interfere with BNY's retention" of the funds.

62.    On September 11, 2014, the Republic enacted Law 26,984, which purports to appoint Buenos Aires-based Nación Fideicomisos, SA in place of BNY Mellon and to change the payment location of the Exchange Bonds explicitly to evade the "illegitimate and illegal obstruction" created by "judicial orders issued by the Southern District Court of the City of New York."

63.    On September 29, 2014, this Court issued an Order holding the Republic in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental

Order regarding the Republic's civil contempt.  A true and correct copy of this Court's September 29, 2014 and October 3, 2014 Orders are annexed hereto as **Exhibits H and I,** respectively.

64.     Upon information and belief, in May 2014, the Republic began issuing BONAR 2024 Bonds, which, as with the 2005 and 2010 Exchange Bonds, are External Indebtedness as defined under the 1994 FAA.

65.     Upon information and belief, in December 2014, the Republic issued approximately $650 million additional BONAR 2024 bonds.

66.     Upon information and belief, in April 2015, the Republic sold over $1.4 billion principal amount of BONAR 2024 Bonds.

67.     Upon information and belief, since May 2014, in total the Republic has issued approximately $5.3 billion of BONAR 2024 Bonds, much of which was sold to international investors outside of the Republic.

68.     Upon information and belief, in violation of its obligations under the Equal Treatment Provision of the FAA, the Republic made its first payment on the BONAR 2024 Bonds on November 7, 2014 and its second payment on May 7, 2015 while paying nothing to White Hawthorne.

69.     Upon information and belief, the Republic intends to make all payments due under the terms of the BONAR 2024 Bonds.

70.     Upon information and belief, the Republic intends to issue additional External Indebtedness in the future.

71.     Upon information and belief, the Republic intends to make all payments due under the terms of any other existing or future External Indebtedness.

13

72.     The Republic's issuance of the 2005 and 2010 Exchange Bonds, its payment of semi-annual interest to the holders of the bonds issued in the 2005 Bond Exchange and 2010 Bond Exchange, while paying nothing to White Hawthorne and other bondholders who did not participate in the Exchanges, violates the Equal Treatment Provision of the FAA.

73.     Upon information and belief, in addition to the bonds issued in the 2005 and 2010 Exchanges and the BONAR 2024 Bonds, the Republic has issued other External Indebtedness, made payments on such External Indebtedness, and it will continue to make payments and issue more of such External Indebtedness.

74.     The Republic's issuance of and payments on the 2005 and 2010 Exchange Bonds, the BONAR 2024 Bonds, and other External Indebtedness constitute violations of the Equal Treatment Provision of the FAA.

75.     To prevent further violations, White Hawthorne seeks specific enforcement of the Equal Treatment Provision of the FAA – the relief previously awarded to NML – with respect to the 2005 and 2010 Exchange Bonds.  White Hawthorne also seeks specific enforcement of the Equal Treatment Provision of the FAA with respect to the BONAR 2024 Bonds and with respect to all other External Indebtedness.

### FIRST CLAIM FOR RELIEF
(For Breach of Contract on the US040114AR16 Bonds)

76.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 herein.

77.     The US040114AR16 Bonds are a Series of Securities under the terms of the FAA.

78.     Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114AR16

14

Bonds entitling Plaintiff to declare the principal amount of the US040114AR16 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

79.     On or about December 7, 2015, Plaintiff advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114AR16 Bonds held by Plaintiff, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 12 of the FAA.

80.     Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114AR16 Bonds to Plaintiff.

81.     By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff, and the Republic is liable to Plaintiff for damages in amount to be determined at trial, plus interest.

## SECOND CLAIM FOR RELIEF
### (For Breach of Contract on the US040114AV28 Bonds)

82.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 81 herein.

83.     The US040114AV28 Bonds are a Series of Securities under the terms of the FAA.

84.     Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114AV28 Bonds entitling Plaintiff to declare the principal amount of the US040114AV28 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

85.     On or about December 7, 2015, Plaintiff advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114AV28 Bonds held by Plaintiff, together with any accrued and unpaid interest, to be

15

immediately due and payable pursuant to Section 12 of the FAA.

86.     Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114AV28 Bonds to Plaintiff.

87.     By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff, and the Republic is liable to Plaintiff for damages in amount to be determined at trial, plus interest.

### THIRD CLAIM FOR RELIEF
(For Breach of Contract on the US040114FC91 Bonds)

88.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 87 herein.

89.     The US040114FC91 Bonds are a Series of Securities under the terms of the FAA.

90.     Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114FC91 Bonds entitling Plaintiff to declare the principal amount of the US040114FC91 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

91.     On or about December 7, 2015, Plaintiff advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114FC91 Bonds held by Plaintiff, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 12 of the FAA.

92.     Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114FC91 Bonds to Plaintiff.

93.     By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff, and the Republic is liable to Plaintiff for damages in amount to be

determined at trial, plus interest.

## FOURTH CLAIM FOR RELIEF
(For Breach of Contract on the US040114GD65 Bonds)

94. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 93 herein.

95. The US040114GD65 Bonds are a Series of Securities under the terms of the FAA.

96. Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114GD65 Bonds entitling Plaintiff to declare the principal amount of the US040114GD65 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

97. On or about December 7, 2015, Plaintiff advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114GD65 Bonds held by Plaintiff, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 12 of the FAA.

98. Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114GD65 Bonds to Plaintiff.

99. By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff, and the Republic is liable to Plaintiff for damages in amount to be determined at trial, plus interest.

## FIFTH CLAIM FOR RELIEF
(For Breach of Contract on the US040114GG96 Bonds)

100. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 99 herein.

DM1\6422025.3

101.    The US040114GG96 Bonds are a Series of Securities under the terms of the FAA.

102.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114GG96 Bonds entitling Plaintiff to declare the principal amount of the US040114GG96 Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

103.    On or about December 7, 2015, Plaintiff advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114GG96 Bonds held by Plaintiff, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 12 of the FAA.

104.    Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114GG96 Bonds to Plaintiff.

105.    By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff, and the Republic is liable to Plaintiff for damages in amount to be determined at trial, plus interest.

**SIXTH CLAIM FOR RELIEF**
(For Breach of Contract on the US040114GH79 Bonds)

106.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 105 herein.

107.    The US040114GH79 Bonds are a Series of Securities under the terms of the FAA.

108.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the US040114GH79 Bonds entitling Plaintiff to declare the principal amount of the US040114GH79 Bonds it holds,

DM1\6422025.3

together with any accrued and unpaid interest, to be due and payable immediately.

109.    On or about December 7, 2015, Plaintiff advised the Republic, by written notice to the Republic's Fiscal Agent, that it was declaring the entire principal amount of the US040114GH79 Bonds held by Plaintiff, together with any accrued and unpaid interest, to be immediately due and payable pursuant to Section 12 of the FAA.

110.    Despite the notice, the Republic has failed to make any payments of principal or interest on the US040114GH79 Bonds to Plaintiff.

111.    By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff, and the Republic is liable to Plaintiff for damages in amount to be determined at trial, plus interest.

### SEVENTH CLAIM FOR RELIEF
(For Specific Enforcement of the Equal Treatment
Provision of the FAA and for Injunctive Relief)

112.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 111 herein.

113.    Pursuant to Section 1(c) of the FAA, the Republic provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

114.    The Republic, therefore, may not make any payment on its 2005 and 2010 Exchange Bonds without also making a ratable payment at the same time to White Hawthorne.

115.    The Republic has engaged in a course of conduct violative of the Equal

Treatment Provision of the FAA.

116.     Through the passage of Law 26,017, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne and other Non-tendering Bondholders in violation of the Equal Treatment Provision of the FAA.

117.     Through the passage of Law 26,547, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne and other Non-tendering Bondholders in violation of the Equal Treatment Provision of the FAA.

118.     The bonds issued in the Exchanges are External Indebtedness.

119.     The Republic's legislative actions forbidding payment on non-tendered bonds violate the Equal Treatment Provision of the FAA.

120.     The Republic's past payment of interest to 2005 Exchange Bondholders, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the Equal Treatment Provision of the FAA.

121.     The Republic's past payment of interest to 2010 Exchange Bondholders, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the Equal Treatment Provision of the FAA.

122.     The Republic's continuing payments of interest to 2005 Exchange Bondholders without ratable payment to White Hawthorne will be a continuing violation of the Equal Treatment Provision of the FAA.

123.     The Republic's continuing payments of interest to 2010 Exchange Bondholders without ratable payment to White Hawthorne will be a continuing violation of the Equal Treatment Provision of the FAA.

124.     White Hawthorne has suffered irreparable injury from the Republic's

violation of the Equal Treatment Provision of the FAA and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne ratably whenever it pays interest to 2005 or 2010 Exchange Bondholders.

125.    In its December 7, 2011 Order in the NML pre-judgment actions, this Court specifically held that the Republic's Equal Treatment obligations applied to bondholders who have brought actions to recover on their defaulted bonds:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

*Id.* at 4 ¶ 3.

126.    Therefore, relief identical to that granted in the pre-judgment cases in NML's pre-judgment actions is warranted in White Hawthorne's pre-judgment and summary judgment case.

127.    Remedies available at law are inadequate to compensate for such injury.

128.    White Hawthorne has performed its part of the contract with the Republic.

129.    The Republic is capable of performing its obligations pursuant to the Equal Treatment Provision of the FAA.

130.    The balance of the equities tips toward the issuance of an injunction.

131.    The public interest would not be disserved by a permanent injunction.

**EIGHTH CLAIM FOR RELIEF**
(For Specific Enforcement of the Equal Treatment Provision of the FAA

DM1\6422025.3

and for Injunctive Relief With Respect to the BONAR 2024 Bonds)

132.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 131 herein.

133.    Pursuant to Section 1(c) of the FAA, the Republic provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

134.    The Republic, therefore, may not make any payment on its External Indebtedness without also making a ratable payment at the same time to White Hawthorne.  Any payment of External Indebtedness where the Republic does not also make a ratable payment at the same time to White Hawthorne constitutes a violation of the Equal Treatment Provision.

135.    The Republic has engaged in a course of conduct violative of the Equal Treatment Provision of the FAA.

136.    Through the issuance of the BONAR 2024 Bonds, the Republic issued a new series of bonds with payment obligations that rank higher than those held by White Hawthorne and other Non-tendering Bondholders in violation of the Equal Treatment Provision of the FAA.

137.    The BONAR 2024 Bonds are External Indebtedness.  The issuance of the BONAR 2024 Bonds to date and future issuances of these bonds has violated and will violate the Equal Treatment Provision of the FAA.

138.    The Republic's past payment of interest to the holders of the BONAR

2024 Bonds, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the Equal Treatment Provision of the FAA.

139.    The Republic's continuing payments of interest to the holders of the BONAR 2024 Bonds without ratable payment to White Hawthorne will be a continuing violation of the Equal Treatment Provision of the FAA.

140.    White Hawthorne has suffered irreparable injury from the Republic's violation of the Equal Treatment Provision of the FAA and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne ratably whenever it pays interest to the holders of the BONAR 2024 Bonds.

141.    Remedies available at law are inadequate to compensate for such injury.

142.    White Hawthorne has performed its part of the contract with the Republic.

143.    The Republic is capable of performing its obligations pursuant to the Equal Treatment Provision of the FAA.

144.    The balance of the equities tips toward the issuance of an injunction.

145.    The public interest would not be disserved by a permanent injunction.

### NINTH CLAIM FOR RELIEF
(For Specific Enforcement of the Equal Treatment Provision of the FAA
and for Injunctive Relief With Respect to All External Indebtedness)

146.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 145 herein.

147.    Pursuant to Section 1(c) of the FAA, the Republic provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without

preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness . . . ."

148.    The Republic, therefore, may not make any payment on its External Indebtedness without also making a ratable payment at the same time to White Hawthorne.  Any payment of External Indebtedness where the Republic does not also make a ratable payment at the same time to White Hawthorne constitutes a violation of the Equal Treatment Provision.

149.    The Republic has engaged in a course of conduct violative of the Equal Treatment Provision of the FAA.

150.    Upon information and belief, the Republic has issued and will issue in the future External Indebtedness in violation of the Equal Treatment Provision of the FAA.

151.    The Republic's past payments to the holders of External Indebtedness, while paying nothing to White Hawthorne and other Non-tendering Bondholders, violated the Equal Treatment Provision of the FAA.

152.    The Republic's continuing payments to the holders of External Indebtedness without ratable payment to White Hawthorne, including External Indebtedness that upon information and belief the Republic will issue in the future, will be a continuing violation of the Equal Treatment Provision of the FAA.

153.    White Hawthorne has suffered irreparable injury from the Republic's violation of the Equal Treatment Provision of the FAA and will continue to suffer such injury unless this Court specifically enforces that Provision with a mandatory injunction requiring the Republic to pay White Hawthorne ratably whenever it pays the holders of the External Indebtedness (including, for the avoidance of doubt, any bonds with the ISIN ARARGE03H413,

24

whether issued before or after the entry of the injunction) or holders of "Replacement Obligations" (meaning bonds or other obligations issued, whether before or after entry of the injunction, in exchange, substitution, restructuring, refinancing or satisfaction of any BONAR 2024 Bonds or other Replacement Obligations).

154. Remedies available at law are inadequate to compensate for such injury.

155. White Hawthorne has performed its part of the contract with the Republic.

156. The Republic is capable of performing its obligations pursuant to the Equal Treatment Provision of the FAA.

157. The balance of the equities tips toward the issuance of an injunction.

158. The public interest would not be disserved by a permanent injunction.

WHEREFORE, Plaintiff White Hawthorne demands judgment against the Republic of Argentina, as follows:

    i. On Count One, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

    ii. On Count Two, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

    iii. On Count Three, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

    iv. On Count Four, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

    v. On Count Five, awarding Plaintiff damages against the Republic in an amount to be determined at trial, plus interest;

    vi. On Count Six, awarding Plaintiff damages against the Republic in an

amount to be determined at trial, plus interest;

vii.    On Count Seven, awarding an Order specifically enforcing the Equal

Treatment Provision of the FAA, by requiring ratable payment to White

Hawthorne whenever the Republic makes payments on the 2005 and 2010

exchange bonds;

viii.    On Count Eight, awarding an Order specifically enforcing the Equal

Treatment Provision of the FAA, by requiring ratable payment to White

Hawthorne whenever the Republic makes payments on the BONAR 2024

Bonds;

ix.    On Count Nine, awarding an Order specifically enforcing the Equal

Treatment Provision of the FAA, by requiring ratable payment to White

Hawthorne whenever the Republic makes payments on all External

Indebtedness;

x.    Awarding Plaintiff its costs, attorneys' fees and such other and further

relief as this Court shall deem just and proper.

Dated: New York, New York
      December 8, 2015

**DUANE MORRIS LLP**

By: _Anthony J. Costantini_

Anthony J. Costantini
E-mail:ajcostantini@duanemorris.com
Suzan Jo
E-mail:sjo@duanemorris.com
Kevin P. Potere
Email: kppotere@duanemorris.com
1540 Broadway
New York, NY 10036-4086
Telephone: +1 212 692 1000
Fax: +1 212 692 1020
*Attorneys for Plaintiff White Hawthorne, LLC*

26